IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ADRIANE OLVERA,                             §
                                            §
        Plaintiff,                          §
                                            §
v.                                          §        Civil Action No. 3:24-CV-01285-N
                                            §
HENDERSON COUNTY, TEXAS,                     §
*et al.*,                                   §
                                            §
        Defendants.                         §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Henderson County's motion to dismiss [38] and

motions for judgment on the pleadings filed by Defendants Philip R. Taft, Philip R. Taft,

Psy.D & Associates, PLLC, and Kevin Jeffries (collectively "Taft Defendants") [47] and

Southern Health Partners, Inc. ("SHP") [41].  The Court denies Henderson County's

motion and grants the motions filed by SHP and the Taft Defendants.

## I. ORIGINS OF THE MOTIONS

This is a jail conditions case.  Plaintiff Adriane Olvera brings claims of negligence

and a violation of her rights under 42 U.S.C. § 1983 against Defendants Henderson County;

SHP; Philip R. Taft; Philip R. Taft, Psy.D & Associates, PLLC ("Taft PLLC"); and Kevin

Jeffries.  Pl.'s Compl. ¶¶ 3–4, 6–10 [1].  Olvera was arrested and taken into custody at the

Henderson County jail on May 24, 2022.[1]  *Id*. ¶ 13.  After jail personnel determined that

---

[1] For the purposes of these motions, the Court assumes the truth of all well-pleaded facts
in the Complaint.

MEMORANDUM OPINION AND ORDER – PAGE 1

Olvera might be at risk of self-harm, Olvera was placed in a "violent cell," a suicide-prevention cell devoid of furniture, running water, a toilet, toilet paper, or shower. *Id*. The lights in the cell were turned on twenty-four hours every day. *Id*. ¶ 17. Instead of a toilet, Olvera was forced to relieve herself into a drain in the floor. *Id*. ¶ 13.

Jail staff took Olvera's clothing and allowed her only an anti-suicide blanket. *Id*. ¶ 16. For the duration of her five-week stay in the violent cell, Olvera was allowed approximately six opportunities to shower, wash her hands, or brush her teeth. *Id*. ¶ 15. At one point, Olvera menstruated and was not allowed hygiene products, underwear, toilet paper, or anything to clean blood from the floor of the cell for at least one day. *Id*. ¶ 42. For the entirety of the stay, jail staff denied Olvera the opportunity to see medical staff or obtain Prilosec, a medication she needed for indigestion caused by a chronic condition. *Id*. ¶ 43.

After approximately one week in the violent cell, Kevin Jeffries, a mental health professional, visited Olvera and determined that she was no longer a threat to herself. *Id*. ¶ 20. Despite being cleared from suicide watch, Olvera remained in the violent cell for approximately four more weeks. *Id*. Jail officials released Olvera from the violent cell on or about June 27, 2022. *Id*. ¶ 44.

SHP is a private company that has a contract with the County to provide medical care at the jail. *Id*. ¶ 10. All medical staff, other than mental health services staff, are employees of SHP. *Id*. ¶ 22. Taft PLLC is a psychology practice that contracts with the County to provide mental health services at the jail. *Id*. ¶ 85. Dr. Taft is the primary practitioner of Taft PLLC. *Id*. ¶ 46. Dr. Taft outsourced all his clinician-level work to a

licensed chemical dependency counselor ("LCDC") intern, Kevin Jeffries. *Id*. ¶¶ 46, 49–50. Olvera alleges that Taft provided no training or supervision to Jeffries. *Id*. ¶ 55. Instead, jail staff, who are not licensed psychologists or mental health professionals, trained Jeffries on how to perform his job duties. *Id*. Olvera alleges the County's jail staff and Jeffries, on behalf of the Taft Defendants, violated her constitutional rights by subjecting her to unlawful conditions of confinement. *Id*. ¶¶ 94, 96–97, 101. She further alleges that SHP negligently caused Olvera's harms in the violent cell. *Id*. ¶ 117.

## II. RULE 12(C) LEGAL STANDARD

Federal Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The standard for dismissal on the pleadings under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *See Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

MEMORANDUM OPINION AND ORDER – PAGE 3

A court generally accepts well-pled facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

### III. The Court Denies Henderson County's Motion

Henderson County asks the Court to dismiss Olvera's section 1983 claims because her claim fails as a matter of law. Under 42 U.S.C. § 1983, every "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .subjects, or causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities, shall be civilly liable to the injured party. "Municipalities can be held liable for violating a person's constitutional rights under § 1983." *Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 308 (5th Cir. 2020) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)). However, a municipality cannot be held liable solely on a respondeat-superior theory. *Monell*, 436 U.S. at 691.

To state a conditions-of-confinement claim, "a plaintiff must plead facts that plausibly establish '(1) a condition — a rule, a restriction, an identifiable intended

condition or practice, or sufficiently extended or pervasive acts or omissions of jail officials — (2) that is not reasonably related to a legitimate government objective and (3) that caused the constitutional violation.'" *Rangel v. Wellpath*, LLC, 2024 WL 1160913, at *6 (N.D. Tex. 2024) (quoting *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (collecting cases)). "In a conditions-of-confinement claim, 'an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction.'" *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996)).

### A. Olvera Sufficiently States a Conditions-of-Confinement Claim Against Henderson County

Henderson County argues that Olvera failed to state a section 1983 claim based on her detainment in a violent cell because the Fifth Circuit recently held in a similar case that the conditions of the County's violent cells are reasonably related to a legitimate government purpose. Def.'s Mot. Br. 3 [38]; *see also Alexander v. Philip R. Taft Psy D & Assocs., P.L.L.C.*, 165 F.4th 309, 323 (5th Cir. 2025). The Fifth Circuit concluded that, "as barren as the violent cell was, each condition was reasonably related to the legitimate government interest of protecting suicidal inmates from self-harm," an interest that is constitutionally imposed on the State. *Alexander*, 165 F.4th at 323. However, the Fifth Circuit clarified that it did not hold that the violent cell's conditions are permissible in all circumstances. *Id*. at 324 n.11.

Furthermore, Olvera does not just contest the conditions of the violent cell. She also alleges that she was unlawfully held in the violent cell for reasons unrelated to the County's

MEMORANDUM OPINION AND ORDER – PAGE 5

constitutional duty to prevent self-harm.  Pl.'s Resp. 2 [42].  Unlike the detainee in *Alexander*, the County kept Olvera in a violent cell for approximately four weeks after she was cleared from suicide watch.  *Id*. at 5.  Olvera also alleged that officers told her she needed to "act better" to be released from the violent cell.  *Id*. at 6.  These well-pleaded facts support her allegations that officers intended to punish her, and that the government had no legitimate nonpunitive objective to keep her in the violent cell for over a month.  As a result of the County's policy, Olvera alleges she suffered a constitutional violation in the form of prolonged detainment under "barbaric" conditions without justification.  *Id*. at 12.  Thus, the Court holds that Olvera sufficiently stated a conditions-of-confinement claim.  Accordingly, the Court denies Henderson County's motion.[2]

## IV.  THE COURT GRANTS THE TAFT DEFENDANTS' MOTION

Olvera brings section 1983 claims against the Taft Defendants, alleging that they willfully deprived her of access to mental health care, resulting in a violation of her constitutional rights.  Pl.'s Compl. ¶ 75.  Specifically, she asserts that Dr. Taft failed to adequately train or supervise Kevin Jeffries, who was not licensed to provide psychological care when he conducted Olvera's mental health evaluation.  Pl.'s Compl. ¶ 50, 55.  Olvera further alleges that Jeffries was deliberately indifferent to Olvera's prolonged detainment

---

[2] The County also argues that the jail did not violate Olvera's constitutional rights by holding her in the violent cell because she later requested a second stay in the violent cell.  Def.'s Mot. Br. 11.  This argument is not relevant because Olvera did not allege in her complaint that the second confinement was unlawful.  Additionally, the second confinement in the violent cell has no bearing on the legality of the first prolonged confinement.

in the violent cell, thus subjecting her to unconstitutional conditions of confinement.  Pl.'s Resp. 8 [54].  The Court addresses the claims in turn.

### A.  Olvera Fails to State a Section 1983 Claim Against Jeffries

First, Olvera alleges that Kevin Jeffries was not licensed to provide psychological care to detainees at the Henderson County Jail because, as an LCDC intern, he was not legally qualified to treat individuals for mental health issues.  Pl.'s Compl. ¶ 50.  Even accepting this well-pleaded allegation as true, the Court holds that Olvera failed to sufficiently allege that Jeffries's mental health evaluation contributed to Olvera's continued detainment in the violent cell.

The Texas Commission on Jail Standards requires that each facility have a plan that "provide[s] procedures that shall give inmates the ability to access a mental health professional at the jail or through a telemental health service."  37 TEX. ADMIN. CODE § 273.2(13).  "If a mental health professional is not present at the county jail at the time or available by telemental health services, then [the plan must] require the jail to provide the inmate access to, at a minimum, a qualified mental health professional (as defined by [26 TEX. ADMIN. CODE § 301.303(48)]) within a reasonable time."  Id.  Under Texas law, a qualified mental health professional is one with competency in the work to be performed and (1) has a bachelor's degree from an accredited university with a minimum number of hours dedicated to a major in one of various fields; (2) is a registered nurse; or (3) completes an alternative credentialing process.  26 TEX. ADMIN. CODE § 301.303(48).

Here, Olvera plausibly pleaded that Jeffries was unqualified to provide psychological services.  In her complaint, she cited state law specifying that an "LCDC is

authorized to provide chemical dependency counseling services involving the application of the principles, methods, and procedures of the chemical dependency profession . . . . The license does not qualify any individual to provide services outside this scope of practice." 26 TEX. ADMIN. CODE § 562.3(a). Psychological counseling is outside the scope of chemical dependency counseling. *Id*. at (b)(4). However, this allegation is insufficient to support Olvera's constitutional violation claim that Jeffries deprived her of mental health care or subjected her to unlawful conditions of confinement. Olvera stated that Jeffries spoke with her approximately one week after she was detained in the violent cell and correctly determined that she was no longer a threat to herself. Pl.'s Compl. ¶ 20. Thus, Jeffries provided her with adequate mental health care. That Jeffries was not licensed to psychological care is irrelevant because his evaluation did not contribute to her prolonged detainment.

Olvera also asserts that Jeffries "completely ignored" her after clearing her from suicide watch and "knowingly disregarded the serious harm she was suffering" during her detainment in the violent cell. Pl.'s Resp. 18. However, it was the County's duty to remove her from the cell — not Jeffries's. The Court "cannot charge mental health professionals, contracted to provide care to pretrial detainees, with releasing inmates from suicide cells or improving the conditions of their protective confinement." *Alexander*, 165 F.4th at 326. As a contracted health professional, Jeffries had "no authority to confine individuals or to free them from confinement." *Id*. Therefore, the Court holds that Olvera fails to state a section 1983 claim against Jeffries.

### B.  Olvera Fails to State a Section 1983 Claim Against Dr. Taft

Similarly, Olvera also fails to state a section 1983 claim against Dr. Taft for supervisor liability.  "To hold a supervisory official so liable, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998).

As discussed, Olvera did not sufficiently allege that Jeffries provided subordinate health care that contributed to her prolonged detention in the violent cell.  Thus, Olvera cannot sufficiently plead that Dr. Taft's alleged failure to train or supervise Jeffries caused a violation of her constitutional rights.

### C.  Olvera Fails to State a Section 1983 Claim Against Taft PLLC

Olvera alleges that Dr. Taft and Taft PLLC are also subject to *Monell* liability for failing to provide or enforce any policies "addressing appropriate suicide prevention and use of the violent cell."  Pl.'s Compl. ¶ 75.  To state a claim for municipal liability under *Monell*, a plaintiff must plead facts that plausibly establish three elements: (1) a policymaker; (2) an official custom or policy; and (3) a violation of constitutional rights whose moving force is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

Because the Fifth Circuit established that contracted mental health providers cannot be held liable for failing to release inmates from suicide cells or improving the conditions of their protective confinement, the Court concludes that Taft PLLC is not a policymaker

for the purposes of a *Monell* claim. *Alexander*, 165 F.4th at 326. Because Olvera cannot establish that Taft PLLC had any authority as a policymaker, the Court need not reach the remaining elements of the *Monell* claim. Therefore, Olvera cannot plausibly state a *Monell* claim against Taft PLLC for failing to release Olvera from the violent cell.

The Court concludes that Olvera fails to allege section 1983 claims against any of the Taft Defendants. Accordingly, the Court grants the Taft Defendants' motion for judgment on the pleadings.

## V. THE COURT GRANTS SHP'S MOTION

Olvera asserts a negligence claim against SHP, alleging that SHP's medical staff failed to monitor Olvera's health and caused her to suffer harm in the violent cell. Pl.'s Compl. ¶¶ 113, 117. Under Texas law, Overa's claims amount to a health care liability claim, defined as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(A)(13). From this definition Texas courts identify the three elements for a health care liability claim as: "(1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the

MEMORANDUM OPINION AND ORDER – PAGE 10

defendant's alleged departure from accepted standards proximately caused the claimant's injury or death." *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012).

SHP argues that, as a medical provider, it had no duty to make any determinations about the conditions of the violent cell or the duration of Olvera's detainment. Def.'s Mot. Br. 4–5 [41]. The Court agrees. Under Texas law, "[t]he general duty of a physician or health care provider is to act as a reasonably prudent physician or health care provider would act in the same or similar circumstances." *Martinez v. Pfizer Inc.*, 388 F. Supp. 3d 748, 769 (W.D. Tex. 2019) (citing *Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex. 1993)). As previously discussed, only Henderson County had a duty or authority to release Olvera from the violent cell. Furthermore, Olvera does not allege any facts that suggest that SHP provided substandard care that caused her to be detained in the violent cell longer than necessary. Thus, the Court grants SHP's motion.

## CONCLUSION

For the foregoing reasons, the Court denies Henderson County's motion for judgment on the pleadings. The Court also grants the motions for judgment on the pleadings filed by the Taft Defendants and SHP. Finally, the Court denies Olvera's motion for leave to file sur-reply to SHP's motion for judgment on the pleadings[3] [49] and dismisses SHP's motion for summary judgment as moot [68].

---

[3] The Court denies Olvera's motion for sur-reply because SHP did not raise a new argument in its Reply and there are no "exceptional or extraordinary circumstances" that warrant a sur-reply. *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001) ("This Court has found that surreplies are usually not that helpful . . . and only permits pleadings beyond Local Civil Rule 7.1 in exceptional or extraordinary circumstances.")

MEMORANDUM OPINION AND ORDER – PAGE 11

Signed March 11, 2026.


David C. Godbey
Senior United States District Judge